A/S J. LUDWIG MOWINCKLES
REDERI, Appellee,

v.

TIDEWATER CONSTRUCTION
CORPORATION, Appellee.

LONE STAR INDUSTRIES,
INC., Appellant,

v.

GEARBULK, LTD., Appellee.

No. 76–2240.

United States Court of Appeals,
Fourth Circuit.

Argued May 2, 1977.
Decided Aug. 3, 1977.

John B. King, Jr., Norfolk, Va. (Hugh S. Meredith, Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellant.

Robert M. Hughes, III, Norfolk, Va. (John R. Crumpler, Jr., Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., on brief), R. Arthur Jett, Jr., Norfolk, Va. (Jett, Berkley & Furr, Norfolk, Va., on brief), for appellees.

Before WINTER, Circuit Judge, LEONARD P. MOORE,* Senior Circuit Judge, and THOMSEN,** Senior District Judge.

THOMSEN, Senior District Judge:

The claims, counterclaims, cross-claims and third-party claim filed in the district court in this action arose out of the collapse of a pier facility in Norfolk, Virginia, owned and operated by appellant Lone Star Industries, Inc., resulting in the death of two Lone Star employees and injuries to a third, as well as damages to the pier and to the M/V Heina. The vessel, which was discharging a cargo of cement clinker at the pier when the casualty occurred, is owned by appellee A/S J. Ludwig Mowinckles Rederi (Mowinckles), and was under charter to appellee Gearbulk, Ltd.

The pier facility was designed and constructed for Lone Star by appellee Tidewater Construction Corp. to receive and accommodate cargoes of cement clinker from large self-unloading vessels (like the M/V Heina) under charter to Gearbulk. Clinker is discharged by use of a vessel's crane into two large hoppers mounted on the pier, which can be moved along the pier to permit unloading of all hatches without moving the vessel. The clinker is carried by conveyor belts from the hoppers to a storage bin.

On the morning of November 8, 1972, the south hopper on the pier collapsed during the unloading of the M/V Heina and fell onto the ship and into the water. Two Lone Star employees on the pier were

---

* Of the United States Court of Appeals for the Second Circuit, sitting by designation.

** Of the United States District Court for the District of Maryland, sitting by designation.

killed, and a third was injured. The estates of the deceased Lone Star employees have filed wrongful death actions against Mowinckles and Tidewater in a state court, and against Mowinckles in the district court. The injured employee filed an action against Mowinckles and Tidewater in a state court. Those actions have not yet come to trial, and Lone Star is not a party to any of them. Workmen's compensation benefits have been paid under the Virginia Workmen's Compensation Act, Va. Code Ann. § 65.1–1 et seq. (1973 Repl.Vol.).[1]

Mowinckles instituted this suit in admiralty in the Eastern District of Virginia against Lone Star and Tidewater, alleging negligence and breach of contract, and seeking damages for injury to the ship and indemnification for any liability which may be imposed on it in the pending wrongful death or personal injury actions brought against it by Lone Star employees or their estates, and attorneys' fees and expenses incurred in defense of those actions. Lone Star filed a counterclaim against Mowinckles, alleging negligence on the part of the vessel and seeking recovery for damages to the pier. Tidewater also filed a counterclaim against Mowinckles, alleging negligence on the part of the vessel, and seeking damages from Mowinckles for expenses incurred in rebuilding and repairing the pier and indemnification for all sums it had already incurred or would incur in connection with any actions, including personal injury and wrongful death actions, arising out of the casualty. Lone Star filed a cross-claim against Tidewater, alleging negligence and breach of contract by Tidewater in the design and construction of the pier facility, and seeking recovery for all damage to the pier as well as indemnification for all liability and expenses incurred and to be incurred in this case and in any other actions arising

out of the casualty. In a cross-claim against Lone Star, Tidewater alleged that the sole cause of the accident was Lone Star's negligence and breach of contract, and sought payment of the unpaid balance due Tidewater under its contract with Lone Star to repair and rebuild the pier, and indemnification for any liability and expenses incurred by Tidewater in Mowinckles' federal suit or any other actions arising out of the casualty.

In an opinion dated February 2, 1976, the district court found: that the ship had not in any way caused the collapse of the pier; that there was no negligence or breach of warranty by Tidewater in the design or construction of the pier facility; that Lone Star employees had permitted the hopper to be excessively overloaded; and that such overloading was the sole proximate cause of the casualty. The court concluded that neither Mowinckles nor Tidewater had any liability for damages to Lone Star or to each other, that Mowinckles should recover from Lone Star its damages in full, and that Tidewater should recover on its cross-claim against Lone Star for the reconstruction of the pier and facilities. No appeal has been taken from the judgment entered on those ruling.

In September 1976, after further argument, the district court ruled on the indemnity claims, holding that the indemnification issue was ripe for determination and that Mowinckles and Tidewater are entitled to indemnification from Lone Star for all sums, including attorneys' fees and expenses, already incurred or to be incurred by them in the wrongful death and personal injury actions.[2] The stated basis of the decision in favor of both Mowinckles and Tidewater was that Lone Star had been the primary tortfeasor whereas Mowinckles and

---

1. The casualty occurred before the effective date of the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. The expanded shoreside coverage of the Act, see *Northeast Marine Terminal Co. v. Caputo,* —— U.S. ——, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977), is not applicable, and the employees, who were killed or injured while working on the pier, were

entitled to state workmen's compensation benefits.

2. These rulings appear in the district court's memorandum opinion and order of September 3, 1976, the amendment order of September 16, 1976, and the judgment entered on September 21, 1976.

Tidewater had been only passive parties; the decision in favor of Mowinckles was also based on breach by Lone Star of an implied warranty of workmanlike service.[3]

On this appeal Lone Star challenges only the district court's judgment on indemnification. The issues presented are: (1) whether the indemnity claims were ripe for adjudication; (2) whether Mowinckles and Tidewater are entitled to indemnification on a tort theory based on the district court's finding that Lone Star's negligence was the sole proximate cause of the casualty, and (3) whether Mowinckles is entitled to indemnification based on a contract theory of a breach by Lone Star of an implied warranty of workmanlike service. Because we conclude that the claims of Mowinckles and Tidewater for indemnification against their expenses and possible liability in the pending actions brought by Lone Star employees or their estates were not ripe for adjudication, we do not reach the other issues.

## I

▇▇▇▇ Noting that there is a split of authority as to when the determination of an indemnity issue is premature, the district court adopted the following rule:

> To not be premature, a ship owner's claim for indemnity from an employer of an injured shoreworker must be made after some expenses have been incurred in defending against the shoreworker's claim. The shoreworker's claim need not

be resolved prior to bringing suit for indemnity.

The court then held that the issue of indemnification was ripe for adjudication because both Mowinckles and Tidewater had incurred some expenses in defense of claims by Lone Star employees or their estates.[4]

The authorities on this issue are few and conflicting. The district court relied primarily on *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*, 339 F.2d 673 (3 Cir. 1964), cert. denied, 382 U.S. 812, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). In that case a shipowner filed suit against a stevedore claiming indemnity for all sums it had already paid or would have to pay in a suit then pending in the same federal court brought against the shipowner by an injured longshoreman employed by the stevedore. The Third Circuit concluded that the action for indemnification was not premature, because it had been commenced after the shipowner had incurred some expenses in defending the personal injury suit. The court observed, however, that it would be duplicitous, unnecessarily time consuming and an invitation to controversy if the two proceedings were tried on separate occasions; it therefore instructed the district court on remand to consider the question of consolidation, and to consolidate the two proceedings "if it finds no disadvantages outweighing the obvious advantages of consolidation." 339 F.2d at 675.[5]

---

**3.** See *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and its progeny.

**4.** The district court applied federal law to decide all of the indemnity issues, apparently assuming that admiralty law would control all issues in the case even though the injuries to and deaths of the Lone Star employees occurred on the pier, see *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971), and the workmen's compensation benefits were paid under Virginia law and not under the Longshoremen's and Harbor Workers' Compensation Act. Because we conclude that the indemnification claims were not ripe for adjudication, we do not reach, and therefore intimate no opinion on, the question of what law governs the merits of the several indemnification claims in this case.

Lone Star argues that state law should govern on the issue of the ripeness of the indemnification claims for adjudication. We conclude that the district court was correct in looking to federal law to determine whether a decision on the indemnity claims would be premature, because the question of the ripeness of a claim for adjudication in a federal court is essentially a question of the judicial power of the court over the claim and whether the court should exercise that power.

**5.** A practical approach was also taken in *Moran Towing & Transportation Co. v. United States*, 56 F.Supp. 104 (S.D.N.Y.1944). That court held that an action for indemnification against a potential damage award in a pending state court suit was not premature, but added that "the trial of this [indemnity] action should be stayed until after the liability of the libellant

Before the decision in *Ellerman*, two district courts in the Third Circuit had found that claims for indemnification against liability incurred or to be incurred in pending actions were premature where the legal liability of the indemnitee had not yet been established. *Mitsui Steamship Co. v. Jarka Corp.*, 218 F.Supp. 424 (E.D.Pa.1963); *West Africa Navigation, Ltd. v. Nacirema Operating Co.*, 191 F.Supp. 131 (E.D.Pa.1961).[6] In *Greenwich Marine, Inc. v. S. S. Alexandra*, 339 F.2d 901 (2 Cir. 1965), the Second Circuit held that a claim for indemnification in a suit involving loss and damage to cargo was premature, and therefore could not serve as the basis for seizure of the vessel. In that case, however, no suit against the indemnitee for the cargo damage had been instituted, and it was quite possible that no suit which might give rise to an indemnity claim would ever be instituted.

This Circuit has not yet ruled on the issue of the ripeness of a shipowner's claim for indemnity against liability and expenses incurred or to be incurred in a pending but not yet decided personal injury or wrongful death action. In *Rederi A/B Dalen v. Maher*, 303 F.2d 565 (4 Cir. 1962), we held that an adjudication of liability was not a prerequisite to a shipowner's claim for indemnity from a stevedore for counsel fees incurred in defending a wrongful death action brought by a longshoreman's widow against the shipowner where the wrongful death action had been fully settled and the stevedore, who had been impleaded by the shipowner, had paid the full amount of the settlement to the shipowner. We concluded that in those circumstances the formality of reducing the wrongful death claim to final judgment was not a prerequisite to the shipowner's indemnity claim for counsel fees. We followed *Maher* in *American Export Lines v. Norfolk Shipbuilding & Drydock Corp.*, 336 F.2d 525 (4 Cir. 1964), where

the shipowner had been absolved by a jury of all liability to an employee of the shipyard and was claiming indemnity from the shipyard only for legal expenses incurred in the successful defense of the employee's suit.

## II

■ Whether an indemnification issue is ripe for adjudication depends on the facts and circumstances of the case under consideration. Here, there has been neither a determination of liability nor a settlement in any of the personal injury or wrongful death actions pending against Mowinckles and Tidewater in the district court and state courts. We cannot tell at this time what the outcome of those actions will be; the fact finders therein may find, on the evidence presented to them, that Mowinckles or Tidewater or both are liable to the plaintiff or plaintiffs in those cases. To award, in this action, indemnification against all liability and expenses, incurred or which may be incurred by Mowinckles or Tidewater in those actions, could lead to incongruous · results. The fact that they have already incurred some expenses in defending those actions does not make ripe their claims for indemnification against all potential liability and expenses. We conclude that a ruling on indemnification in the setting presented to the district court was premature.

■ An important factor in considering ripeness is whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated. See generally 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3532 (1975). The district court awarded indemnification to Mowinckles and Tidewater on the basis of its finding in a suit for damages to property that, as between Mowinckles, Lone Star and Tidewater, Lone Star was the primary tortfeasor and Mow-

is finally determined in the State Court action." 56 F.Supp. at 106.

**6.** The Third Circuit distinguished *West Africa* in *Ellerman* on the basis that whereas in *West Africa* no claim was made for damages already

suffered, part of the shipowner's indemnity claim in *Ellerman* was for legal expenses already incurred in the pending personal injury action. See *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*, supra, at 675 n. 3.

inckles and Tidewater were only passive parties. That finding, however, will not be conclusive on the issue of liability of Mowinckles or Tidewater or both to the plaintiffs in the personal injury and wrongful death actions. The plaintiffs in those actions are not parties to or in privity with any party to the instant case, and will not be bound by the district court's findings and judgment in this case on the issues of negligence and responsibility for the casualty.

Lone Star is not now a party to any of the personal injury or wrongful death actions; it may, however, be brought into one or more of those actions under federal or Virginia rules governing third-party practice. See F.R.Civ.P. 14(a); Va.R.Civ.P. 3:10. If Lone Star is so impleaded, Mowinckles or Tidewater may attempt to claim, as between themselves and Lone Star in those actions, a conclusive effect for the district court's finding herein that, with respect to the damages to the ship and to the pier and facilities, Lone Star was the primary tortfeasor whereas they were only passive parties. That finding, however, would not be determinative of the issue in controversy between Lone Star and Mowinckles or Tidewater in the personal injury or wrongful death actions, namely, whether Lone Star should indemnify Mowinckles or Tidewater or both for their potential liability for the personal injuries to or deaths of the Lone Star employees. Whether Mowinckles or Tidewater should be indemnified by Lone Star against liability for the personal injuries to or deaths of the Lone Star employees would depend in the first place upon whether, in those actions, Mowinckles or Tidewater or both are found to be liable for the personal injuries or deaths. That question cannot be answered at this time.

Likewise, the question whether a breach by Lone Star of an implied warranty of workmanlike service would require that Lone Star indemnify Mowinckles against liability and expenses in the personal injury and wrongful death actions will depend upon the findings in those actions with respect to whether, and if so in what way, Mowinckles was negligent or otherwise responsible for the personal injuries to or deaths of the plaintiffs therein.[7] See, e. g., *Weyerhaeuser S. S. Co. v. Nacirema Operating Co.*, 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); *LeBlanc v. Two-R Drilling Co.*, 527 F.2d 1316, 1320–21 (5 Cir. 1976); *Fairmont Shipping Corp. v. Chevron International Oil Co.*, 511 F.2d 1252, 1258 n. 11, 1260 (2 Cir.), cert. denied, 423 U.S. 838, 96 S.Ct. 66, 46 L.Ed.2d 57 (1975); *Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne*, 386 F.2d 193, 196–97 (4 Cir. 1967).

Under the circumstances the claims of Mowinckles and Tidewater for indemnification should not be resolved in this action. With respect to the wrongful death actions pending in the district court, the proper course is that suggested in *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*, supra. See also *Blake v. Farrell Lines, Inc.*, 417 F.2d 264 (3 Cir. 1970). District courts have broad discretion under F.R.Civ.P. 42(a) to consolidate causes pending in the same district. See generally 9 Wright & Miller, *Federal Practice and Procedure* § 2384, at 272 (1971). Consolidation under Rule 42(a) may be used to achieve the same result as could be reached by means of third-party practice under F.R.Civ.P. 14(a). Therefore, on remand the district court should consider, after providing the parties an opportunity to be heard, whether Mowinckles' indemnification claim should be consolidated with the suits brought by the estates of deceased Lone Star employees against Mowinckles in the district court.[8]

VACATED AND REMANDED.

---

7. We intimate no opinion as to the correctness of the district court's conclusions in his second opinion (from which this appeal is taken) that a warranty of workmanlike service was implied in the contractual relationship between Lone Star and Mowinckles and that Lone Star breached that warranty.

8. With respect to the pending state court actions, we note that under Rule 3:10 of the Virginia Rules of Civil Procedure, which became effective in 1975, a defendant may bring in a third-party who is or may be liable to the defendant for all or part of the plaintiff's claim.

It is possible, therefore, that Mowinckles or Tidewater may implead Lone Star in those actions. We express no opinion on whether under Virginia law a *separate* action for indemnity could be maintained. The Supreme Court of Virginia has held that there is no right to indemnification until there has been actual loss or damage suffered by the indemnitee. *City of Richmond v. Branch*, 205 Va. 424, 137 S.E.2d 882 (1964); *American National Bank v. Ames*, 169 Va. 711, 748, 194 S.E. 784, 797, cert. denied, 304 U.S. 577, 58 S.Ct. 1046, 82 L.Ed. 1540 (1938).