**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1777**

J. IRVIN BEATLEY,

Plaintiff – Appellee,

v.

CHARLES E. AYERS, JR.; RALPH L. COSTEN, JR.; JESSE L. BARBER,

Defendants - Appellants.

**No. 19-1809**

J. IRVIN BEATLEY,

Plaintiff – Appellant,

v.

CHARLES E. AYERS, JR.; RALPH L. COSTEN, JR.; JESSE L. BARBER,

Defendants - Appellees.

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., District Judge. (3:18-cv-00037-JAG)

Argued: October 29, 2020                    Decided: March 10, 2021

Before GREGORY, Chief Judge, TRAXLER, Senior Circuit Judge, and Stephanie A. Gallagher, United States District Judge for the District of Maryland, sitting by designation.

---

Vacated and remanded by unpublished per curiam opinion.

---

**ARGUED:** Stephen M. Faraci, Sr., WHITEFORD TAYLOR PRESTON, L.L.P., Richmond, Virginia, for Appellants/Cross-Appellees. Norman A. Thomas, NORMAN A. THOMAS, PLLC, Richmond, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Patrick D. Houston, WHITEFORD TAYLOR PRESTON, L.L.P., Richmond, Virginia, for Appellants/Cross-Appellees. John K. Burke, Jr., J. K. BURKE LAW FIRM PLC, Richmond, Virginia, for Appellee/Cross-Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff Irvin Beatley brought this action against Defendants Charles Ayers, Ralph Costen, and Jesse Barber after they failed to adhere to the terms of their Settlement Agreement, which was the result of a previous state court action concerning a real estate project. Defendants appeal from the district court's order after a bench trial awarding Beatley $157,195 in damages and $25,000 in punitive damages against Ayers. Beatley cross appeals. For the following reasons, we vacate the district court judgment and remand for further proceedings.[1]

## I. Background

Irvin Beatley was in business with Charles Ayers, Ralph Costen, and Jesse Barber to develop a project called Anchor Point. Another business partner, John Woodfin, Sr., invested in Anchor Point as well. Beatley took out various loans to finance the project and Defendants agreed to reimburse him for his contributions to the project. However, they did not. As a result, Beatley pursued a case against the Defendants in state court, which resulted in a settlement agreement ("Agreement") in June 2017.

The Agreement required Defendants to pay Beatley $134,000 on or before July 17, 2017. The Agreement also required the Defendants

> to assume all of plaintiff's obligations on the loan from Fulton Bank to plaintiff in the original principal amount of approximately $157,000. Defendants agree to use all best efforts to obtain Fulton Bank's consent to

---

[1] Although Barber was a defendant below, Beatley in this appeal does not challenge the district court's rejection of his claims against Barber. Beatley has therefore abandoned any claims against Barber. The use of the term "Defendants" in the opinion therefore will generally refer only to Ayers and Costen.

> their assumption of the loan and the release of plaintiff from all obligations relating to the loan. Defendants further agree that their responsibility under this paragraph includes the payment of the monthly interest charge due on or about July 1, 2017.

(J.A. 25).

The Defendants did not perform their obligations under the Agreement. They did not pay Beatley the $134,000 sum by July 17, 2017, nor did they assume Beatley's obligations on the $157,000 loan. Beatley commenced this action in federal district court in January 2018, asserting against the Defendants four causes of action: breach of contract, conspiracy to breach contract, fraudulent inducement, and conspiracy to commit fraud.

In April 2018, the Defendants paid Beatley $134,000 (plus interest). In May 2018, Beatley's $157,000 loan went into default when the Defendants failed to make the required payments. Defendants and Woodfin Sr. had each also taken out identical $157,000 loans from the Bank in 2006 to finance Anchor Point. Woodfin Sr. had guaranteed everyone's loans with his collateral. When Beatley's $157,000 loan defaulted, the Bank satisfied his loan using the collateral Woodfin Sr. posted before his death. Although the estate of Woodfin Sr. was subrogated to the Bank's interest after the loan was satisfied, the estate took no collection action against Beatley.

The district court conducted a bench trial in November 2018. At trial, Woodfin Jr. explained that he had already closed his father's estate and did not have plans to pursue a claim against Beatley for reimbursement. The court did not hear any testimony from the other administrator of Woodfin Sr.'s estate or its beneficiaries regarding their plans to pursue a claim against Beatley.

4

The district court subsequently issued an order in favor of Beatley on two causes of action. Although the court rejected Beatley's conspiracy claims, the court concluded that the Defendants breached the Agreement and that Ayers committed fraud when inducing Beatley to enter into the Agreement. As to damages, the court held that the Defendants' mid-litigation payment of the $134,000 mooted any claim based on that portion of the Agreement. The district court instead awarded Beatley damages of $157,195, based on the Defendants' failure to assume the Bank loan as required by the Agreement. The district court rejected the Defendants' argument that Beatley suffered no damages because the loan was satisfied through the collateral of the Woodfin estate. The district court believed that the estate, which was subrogated to the Bank's rights under the $157,000 loan, had an obligation to pursue its claim against Beatley; therefore, Beatley had a sufficiently concrete claim for damages. The district court also concluded that Ayers engaged in dishonest and malicious conduct when inducing Beatley to enter into the Agreement. The court therefore ordered Ayers to pay Beatley $25,000 in punitive damages and almost $65,000 in attorney's fees. The Defendants appealed, and Beatley cross-appealed.

## II. Defendants' Appeal

The Defendants argue on appeal that the district court erred by awarding damages in any amount to Beatley. They contend that Beatley cannot prevail on his breach of contract or fraudulent inducement claims because he did not prove that he suffered compensable damages. *See Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016) (explaining that a contract claim requires proof of damages); *Cmty Bank v. Wright*,

5

267 S.E.2d 158, 160 (Va. 1980) ("An allegation of fraud in the abstract does not give rise to a cause of action; it must be accompanied by allegation and proof of damage.").

According to the Defendants, Beatley cannot show any actual, non-speculative damage because the $134,000 due under the Agreement has now been paid and the administrator of the Woodfin estate does not intend to pursue Beatley in connection with the $157,000 loan. And given Beatley's failure to prove actual, compensable damages, the Defendants contend that the awards of punitive damages and attorney's fees must also be stricken. *See Gasque v. Mooers Motor Car Co.*, 313 S.E.2d 384, 388 (Va. 1984) ("[A]n award of compensatory damages . . . is an indispensable predicate for an award of punitive damages").

The Defendants challenge only the district court's determination that Beatley suffered compensable damages.[2] Whether the damages sought by Beatley are compensable in this action is a legal question that we review de novo.

## A. Breach of Contract

We first consider whether Beatley established compensable damages for his breach of contract claim. The breach of contract claim was premised on the Defendants' failure to perform their obligations under the Agreement to pay Beatley $134,000 and to assume the obligations and pay the amounts due under the $157,000 loan.

---

[2] There is no challenge to the court's determination that Ayers' conduct otherwise satisfied the elements of the fraud and contract claims, nor is there a challenge to the court's conclusion that Ayers' conduct was sufficiently egregious to support an award of punitive damages.

6

### 1. $134,000 payment

The district court concluded that Ayers' mid-litigation payment of the $134,000 (plus interest) mooted that portion of the breach of contract claim. We agree.

Because the Agreement did not provide for attorney's fees in the event of a breach, the payment gave Beatley everything he was entitled to receive on that claim—$134,000 plus interest. The payment therefore mooted that portion of Beatley's breach of contract claim. *See Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (concluding that offer of judgment mooted plaintiff's individual claims because the offer gave her "the full amount of damages [] to which she claimed individually to be entitled").

### 2. $157,000 Loan

The district court held that Beatley was damaged by the Defendants' breach of their duties regarding the $157,000 loan. The district court observed that after the Bank's seizure of the Woodfin estate's collateral, the estate was subrogated to the Bank's rights under the promissory note, and the court believed that the estate was obligated to seek payment from Beatley. The district court held that Beatley was injured because he remained exposed to liability connected to the loan after the Defendants' breach.

The Defendants argue that because the Woodfin estate has not sought payment from Beatley and the administrator has disavowed any intention of ever seeking recovery from Beatley, it is conjectural to conclude that he will ever be required to make payment to the estate. The Defendants therefore contend that Beatley failed to prove the elements of his claim because he failed to show he suffered any non-speculative damage. *See Shepherd v. Davis*, 574 S.E.2d 514, 524 (Va. 2003) (explaining that the plaintiff bears the "burden of

7

proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery[]") (internal quotation marks omitted).

We agree that Beatley has not yet suffered any damage from the Defendants' breach of their obligations regarding the $157,000 loan. Although the Defendants contend that the absence of injury means the breach of contract claim fails on the merits, we believe the issue is better understood as one of ripeness. Because Beatley has not yet suffered any damages, his breach of contract claim is not ripe.

Ripeness is a "justiciability doctrine [that] determines when a case or controversy is fit for federal judicial review." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019). "The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" *Miller v. Brown*, 462 F.3d 312, 318–19 (4th Cir. 2006) (quoting *Rescue Army v. Mun. Court of L.A.,* 331 U.S. 549, 584 (1947)). "A case is fit for adjudication when the action in controversy is final and not dependent on future uncertainties; conversely, a claim is not ripe when it rests upon contingent future events that may not occur as anticipated." *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) (internal quotation marks omitted); *accord A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co.*, 559 F.2d 928, 932 (4th Cir. 1977) ("An important factor in considering ripeness is whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated."). Whether a claim is ripe is a legal question governed by federal law. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 544 (4th Cir. 2013) (ripeness is a legal question); *Mowinckles*, 559 F.2d at 931 n.4 ("[T]he

8

district court was correct in looking to federal law to determine whether a decision on the indemnity claims would be premature, because the question of the ripeness of a claim for adjudication in a federal court is essentially a question of the judicial power of the court over the claim and whether the court should exercise that power.").[3]

In this case, Beatley has not yet suffered any damages caused by the Defendants' failure to perform their obligations regarding the $157,000 loan. The Agreement did not require the Defendants to pay Beatley $157,000 so that he could satisfy the loan. Instead, the Agreement obligated the Defendants to assume Beatley's obligations and make all payments due under the loan and to make good-faith efforts to get the Bank to release Beatley from the loan. The Defendants failed to perform their obligations, and their failure led to the Bank's seizure of the Woodfin collateral to satisfy the loan. Thus, despite the Defendants' breach, Beatley's obligations to the Bank under the loan were terminated without any payment from Beatley. Although the Woodfin estate has subrogation rights against Beatley, the estate was nonetheless closed with no attempt to collect from Beatley. And even if the administrator was legally obligated to proceed against Beatley, as the district court believed, the administrator nonetheless did not seek recovery from Beatley before closing the estate, and he testified under oath that he did not intend to seek recovery

---

[3] Because the ripeness of a claim brought in federal court is governed by federal law, we need not consider Beatley's contention that his indemnity claim is ripe under Virginia law.

9

from Beatley.[4]  Given this apparent knowing abandonment by the estate of any claim against Beatley, the possibility that Beatley will ever be required to pay the $157,000 is remote at best.

This aspect of Beatley's breach of contract claim is, at bottom, a claim for indemnification from Defendants for the amount that Beatley might be required to pay to the Woodfin estate.  "Whether an indemnification issue is ripe for adjudication depends on the facts and circumstances of the case under consideration." *Mowinckles,* 559 F.2d at 932. "An important factor in considering ripeness is whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated." *Id.*

Because Beatley will suffer damages only if the Woodfin estate exercises its subrogation rights against Beatley and the administrator has disavowed any intent to do so, Beatley's breach of contract claim is dependent on "contingent future events that may not occur as anticipated." *Naranjo*, 768 F.3d at 347.  Under these circumstances, we conclude that Beatley's breach of contract claim premised on the $157,000 loan is not ripe.  *See Mowinckles*, 559 F.2d at 932 (finding indemnification claim not ripe where "there has been neither a determination of liability nor a settlement in any of the personal injury or wrongful

---

[4]     The district court's ruling relied in part on *First Nat'l Exch. Bank v. Seaboard Citizens Nat'l Bank*, 107 S.E.2d 408 (Va. 1959), where the court held that even after the closure of an estate, the administrator "still has the right and duty to collect and administer any assets which may be afterwards discovered."  *Id.* at 412. In this case, however, the Woodfin estate was aware *before* the estate was closed that the Bank had seized its collateral to satisfy the Beatley loan.

death actions pending against Mowinckles and Tidewater in the district court and state courts").[5]

Beatley thus has no justiciable breach of contract claim. The claim based on the $134,000 payment is moot, and the claim involving the $157,000 loan is not ripe. The district court therefore erred by awarding Beatley judgment on his breach of contract claim.

## B. Fraudulent Inducement

Although we conclude the district court erred by entering judgment in favor of Beatley on his breach of contract claim, the district court also ruled in favor of Beatley on his fraudulent inducement claim against Ayers. On appeal, the Defendants challenge any award on the fraud claim on the same grounds as the breach of contract claim. They contend that Beatley has suffered no damages because the $134,000 payment due under the Agreement was made during the pendency of this litigation and Beatley does not face a claim from the Woodfin estate on the $157,000 loan.

In our view, there are substantive differences between the breach of contract claim and the fraudulent inducement claim that require a different analysis of the issue. The

---

[5] Beatley contends his claim is ripe because it involves not simply indemnity against loss, but indemnity against liability. *See State-Planters' Bank & Tr. Co. v. First Nat. Bank*, 76 F.2d 527, 532 (4th Cir. 1935) ("Where the indemnity is against liability, the cause of action is complete and the indemnitee may recover upon the contract as soon as his liability has become fixed and established, even though he has sustained no actual loss or damage at the time he seeks to recover.") (internal quotation marks omitted). We disagree. Because the Bank was not obligated to release Beatley from the loan regardless of the Defendants' efforts, the Agreement (if performed) would have ensured that Beatley bore no loss connected with the $157,000 loan, but it would not have automatically freed Beatley from liability to the Bank. This case thus involves indemnification against loss, not indemnification against liability.

11

contract and fraud claims arose from the same broad factual context, but the focus of each claim is very different. The breach of contract claim is centered on conduct occurring *after* the execution of the Agreement—the Defendants' failure to perform their obligations under the Agreement. The fraud claim, by contrast, is centered on conduct *leading up to* the execution of the Agreement—the Defendants' misrepresentations that induced Beatley to enter into the Agreement.

Moreover, the fraud claim permits Beatley to seek a broader range of damages than available on his contract claim. On his claim of fraudulent inducement, Beatley seeks to recover his out-of-pocket costs (including mediation costs) incurred in the course of entering into the Agreement, as well as the benefits he would have received had the Agreement been performed as promised. *See CGI Federal v. FCi Federal*, 814 S.E.2d 183, 189–90 (Va. 2018) (explaining that fraudulent inducement plaintiffs may seek "compensatory damages in the form of lost profits" that would have been received if the representations had been true, if those damages can be established "with reasonable certainty"); *Restatement (Second) of Torts* § 549 ("The recipient of a fraudulent misrepresentation is entitled to recover as damages . . . the pecuniary loss to him of which the misrepresentation is a legal cause. . . . The recipient of a fraudulent misrepresentation in a business transaction is also entitled to recover additional damages sufficient to give

12

him the benefit of his contract with the maker, if these damages are proved with reasonable certainty.").[6] He also seeks punitive damages and attorney's fees.

Given the factual basis for the fraudulent inducement claim and the expanded scope of damages available for it, the fraudulent inducement claim is ripe even without regard to the $134,000 payment or the $157,000 loan. Beatley suffered an injury with quantifiable, non-conjectural damages as soon as he signed the Agreement, by compromising his state-court claims and paying mediation costs in order to enter into a contract that the Defendants never intended to perform. Whether Beatley may recover damages for the payment or the loan is relevant to the amount of lost profits Beatley can prove, but those damages are not necessary to make the claim ripe. The fraud claim presents a "clean-cut and concrete" controversy and is therefore ripe for review. *Miller*, 462 F.3d at 319 (internal quotation marks omitted). The question, then, is the propriety of the district court's damage award.

The district court awarded Beatley $157,000 against Ayers because it believed Beatley was liable to the Woodfin estate for that amount after the Defendants failed to pay the $157,000 loan and the Bank seized the estate's property to satisfy the loan. As we have explained, there is no reasonable certainty that Beatley will be required to pay the Woodfin estate because the estate has been closed and the administrator testified that he had no

---

[6] Virginia courts frequently look to principles set out in the *Restatement (Second) of Torts*. *See e.g.*, *Dunn, McCormack & MacPherson v. Connolly*, 708 S.E.2d 867, 870 (Va. 2011) (citing § 766); *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 300 (Va. 1999) (citing § 549); *Zysk v. Zysk*, 404 S.E.2d 721, 722 (Va. 1990) (citing § 892C(1)).

intention of seeking recovery from Beatley. We therefore agree with the Defendants that the possibility Beatley will suffer a loss associated with the $157,000 loan is too speculative to be included in an award for lost profits. *See CGI Federal*, 814 S.E.2d at 189–90 (damages in a fraudulent inducement case may include lost profits if they can be proven with "reasonable certainty"); *Shepherd*, 574 S.E.2d at 524 ("[S]peculation and conjecture cannot form the basis of the recovery.").

That Beatley failed to prove compensable damages as to the $157,000 loan, however, does not mean that he failed to prove *any* compensable damages for the fraud claim. If the Defendants had performed their obligations under the Agreement, Beatley would have been paid $134,000 by July 17, 2017. The $134,000 lost-profit damages, which were established with more than reasonable certainty by the terms of the Agreement itself, were thus a proper component of the fraudulent inducement damage award.

Contrary to the conclusion of the district court, Ayers' mid-litigation payment of the amount due did not moot that portion of the fraudulent inducement claim as it did with the breach of contract claim. The $134,000 payment mooted the breach of contract claim because it gave Beatley everything he sought on that claim. As to the fraudulent inducement claim, the $134,000 payment did not moot the claim because it *did not* give Beatley everything he sought, which included compensation for out-of-pocket expenses, lost profits, punitive damages, and attorney's fees. Any defendant liable on the fraudulent inducement claim, of course, would be entitled to offset the ultimate verdict by the amount of their payment. But the fact of the payment did not prevent the district court from

14

considering the Defendants' $134,000 contractual obligation and their related conduct when assessing liability and damages on the fraudulent inducement claim.

Because the district court awarded damages that are premised on an injury that is too speculative to be included in a damage award and improperly declined to consider evidence related to the concrete injury already suffered by Beatley, we vacate the district court's judgment on Beatley's fraudulent inducement claim against Ayers.

### III. Beatley's Cross-Appeal

In his cross-appeal, Beatley contends that the district court erred by rejecting his conspiracy claims against Ayers and Costen and by rejecting his fraudulent inducement claim against Defendant Costen.

When rejecting the fraudulent inducement claim against Costen, the district court found the evidence failed to establish that Costen never intended to comply with his obligations regarding the $157,000 loan. The court did acknowledge that Costen had no intent to pay the required $134,000 sum in a timely fashion, but believed that fact was irrelevant given that the $134,000 debt had been paid. The district court's analysis of the conspiracy claims was similar. The court noted evidence possibly showing a conspiracy as to the $134,000 payment, but held that "Beatley cannot point to any evidence that the defendants conspired with anyone to breach the duty to pay the $157,[000] note." J.A 988.

As we have already explained, however, the Defendants' conduct in connection with the $134,000 payment did not disappear from the case or otherwise become irrelevant to Beatley's tort claims simply because the Defendants paid the amount due under the Agreement while this litigation was pending. The district court was entitled to consider

15

that conduct when determining liability and fixing damages. The payment works as a credit or offset against the ultimate amount of the verdict, but it does not insulate the underlying facts from judicial consideration.

Because the district court's analysis was premised on a legal error about the scope of evidence it could consider in connection with Beatley's tort claims, we agree with Beatley that the district court's rulings must be vacated. On remand, the district court should reconsider the fraudulent inducement claim against Costen (and Ayers) and the conspiracy claims against both Ayers and Costen in light of all of the evidence, including the evidence associated with the $134,000 payment obligation under the Agreement.[7]

## IV. Conclusion

To summarize, we hold that Beatley's breach of contract claims are not justiciable and that the district court therefore erred by awarding judgment on Beatley's breach of contract claim. We therefore vacate the district court's judgment as to the breach of contract claims and direct the court on remand to dismiss those claims for lack of jurisdiction.[8]

---

[7] Beatley also seeks an award of appellate attorney's fees. We leave it for the district court on remand to consider that claim in the first instance. *See Odeon Capital Group LLC v. Ackerman*, 864 F.3d 191, 199 (2d Cir. 2017) (concluding that district courts are better suited to determine an award of appellate attorney's fees in the first instance).

[8] Because a dismissal on jurisdictional grounds such as ripeness is not a final judgment on the merits, Beatley is free to bring a new breach of contract action if the Woodfin estate proceeds against him in connection with the $157,000 loan. *See Duckett v. Fuller,* 819 F.3d 740, 744 (4th Cir. 2016) (explaining that res judicata requires the existence of a final judgment on the merits); *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 (Continued)

16

The district court also erred by premising the damages for the fraudulent inducement claim on the Defendants' actions regarding the $157,000 loan and by concluding that the mid-litigation payment prevented consideration of the $134,000 contractual obligation in connection with the fraudulent inducement claim. That error also affected the district court's analysis of Beatley's conspiracy claims and the fraudulent-inducement claim asserted against Ayers and Costen. We therefore vacate the district court's judgment against Ayers on Beatley's tort claims and remand for reconsideration of these issues as they pertain to Ayers and Costen in light of the guidance set out in this opinion. Given the connection between actual damages and the quantum of punitive damages and attorney's fees awarded, we likewise vacate the awards of punitive damages and attorney's fees and remand for reconsideration of those awards as well.

*VACATED AND REMANDED*

---

F.3d 908, 912 (4th Cir. 2013) ("[J]urisdictional dismissals are not 'judgment[s] on the merits for purposes of res judicata.'").