16-1545-cv(L)
Odeon Capital Group LLC, et al  v. Bret Ackerman

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____

August Term, 2016

(Argued:     April 19, 2017                    Decided: July 21, 2017)

Docket Nos. 16-1545-cv(L), 16-1717-cv(XAP)
_____

ODEON CAPITAL GROUP LLC, MATHEW VAN ALSTYNE,
EVAN SCHWARTZBERG,

*Petitioners-Appellants-Cross-Appellees*,

v.

BRET ACKERMAN,

*Respondent-Appellee-Cross-Appellant*.

_____

Before: CALABRESI, POOLER, and WESLEY, *Circuit Judges*.

Appeal and cross-appeal from the April 25, 2016 opinion and order of the

United States District Court for the Southern District of New York (Rakoff, *J.*)

denying petitioners' motion to amend their petition to vacate an arbitration

award. Bret Ackerman worked as a bond trader for Odeon Capital Group before

he was fired. He arbitrated a variety of claims arising out of his employment against Odeon and its principals, Mathew Van Alstyne and Evan Schwartzberg (collectively, "Odeon"). As is relevant to this appeal, the arbitrators awarded Ackerman $1,102,193.00 on his claim for unpaid wages.

Odeon brought a petition to vacate the award, alleging the arbitrators engaged in misconduct and acted in manifest disregard of the law. It then sought to amend its petition to assert fraud as an additional ground for vacatur. Odeon alleged Ackerman committed perjury during the arbitration, and that the perjury so tainted the proceedings as to require vacatur. The district court disagreed, finding that even if Ackerman committed perjury, the perjury was not material to the arbitration panel's award.

We hold that to vacate an arbitration award on the ground that the award was fraudulently procured, the petitioner must demonstrate the fraud was material to the award. That is, there must be a nexus between the alleged fraud and the decision made by the arbitrators. The petitioner, however, need not demonstrate that the arbitrators would have reached a different result. In this case, Odeon failed to establish that Ackerman's alleged perjury had any impact

on the arbitration award. The district court therefore correctly denied the petition to vacate.

The district court also denied Ackerman's request for attorneys' fees incurred in defending the arbitration award, and Ackerman cross-appeals from that denial. We agree with Ackerman that the district court applied the wrong legal standard in denying his fee request. The district court based its denial on the ground that the petition to vacate was not unjustified, such that the court's invocation of its inherent powers to make a fee award was unwarranted. However, New York law provides statutory authority for Ackerman's fee request. Where, as here, an employee prevails against an employer on a claim for unpaid wages, New York law mandates that the employee recover "all reasonable attorney[s'] fees." N.Y. Labor Law § 198(1-a). We therefore vacate the denial of attorneys' fees and remand for further proceedings consistent with this opinion.

Affirmed in part, vacated and remanded in part.

_____

MARK D. KNOLL, Bressler, Amery & Ross, P.C. (Nikolas S. Komyati, *on the brief*), New York, NY, *for Petitioners-Appellants-Cross-Appellees Odeon Capital Group LLC, Mathew Van Alstyne, and Evan Schwartzberg*.

JANIE BYALIK, Pashman Stein, Walder Hayden P.C. (Sean Mack, *on the brief*), Hackensack, NJ, *for Respondent-Appellee-Cross-Appellant Bret Ackerman*.

POOLER, *Circuit Judge*:

Bret Ackerman worked as a bond trader for Odeon Capital Group before he was fired. He arbitrated a variety of claims arising out of his employment against Odeon and its principals, Mathew Van Alstyne and Evan Schwartzberg (collectively, "Odeon"). As is relevant to this appeal, the arbitrators awarded Ackerman $1,102,193.00 on his claim for unpaid wages.

Odeon brought a petition to vacate the award, alleging the arbitrators engaged in misconduct and acted in manifest disregard of the law. It then sought to amend its petition to assert fraud as an additional ground for vacatur. Odeon alleged Ackerman committed perjury during the arbitration, and that the perjury so tainted the proceedings as to require vacatur. The district court disagreed, finding that even if Ackerman committed perjury, the perjury was not material to the arbitration panel's award. Odeon appeals from the April 25, 2016 opinion and order of the United States District Court for the Southern District of New York (Rakoff, *J.*) denying its motion to amend, as well as its petition to vacate the award.

4

We hold that to vacate an arbitration award on the ground that the award was fraudulently procured, the petitioner must demonstrate the fraud was material to the award. That is, there must be a nexus between the alleged fraud and the decision made by the arbitrators. The petitioner, however, need not demonstrate that the arbitrators would have reached a different result. In this case, Odeon failed to establish that Ackerman's alleged perjury had any impact on the arbitration award. The district court therefore correctly denied the petition to vacate.

The district court also denied Ackerman's request for attorneys' fees incurred in defending the arbitration award, and Ackerman cross-appeals from that denial. We agree with Ackerman that the district court applied the wrong legal standard in denying his fees request. The district court based its denial on the ground that the petition to vacate was not unjustified, such that the court's invocation of its inherent powers to make a fees award was unwarranted. However, New York law provides statutory authority for Ackerman's fees request. Where, as here, an employee prevails against an employer on a claim for unpaid wages, New York law mandates that the employee recover "all reasonable attorney[s'] fees." N.Y. Labor Law § 198(1-a).  We therefore vacate the

5

denial of attorneys' fees and remand for further proceedings consistent with this opinion.

## BACKGROUND

Ackerman worked as a bond trader for Odeon, pursuant to an employment agreement, from May 2011 until he was fired in March 2014. After losing his job, Ackerman filed a statement of claim with the Financial Industry Regulatory Authority ("FINRA"), which governs the relationship between brokers and their employers, seeking arbitration. Ackerman asserted a variety of claims against Odeon, including failure to pay commissions owed, breach of his employment agreement, disability discrimination, retaliation arising out of an investigation into a trade he made in a February 2014, and filing of a false termination notice. He sought damages in excess of $5 million.

A three-person arbitration panel took testimony on Ackerman's claims during a six-day hearing in October 2015. Ackerman testified on his own behalf during the arbitration proceedings. During his testimony, Ackerman was asked about an on-the-record interview ("OTR") request FINRA sent him in April 2014. The OTR sought to interview Ackerman regarding a variety of trades he made while working at Odeon in 2011.

Odeon alleges that Ackerman committed perjury at least twice during this portion of his testimony. First, Odeon's counsel asked whether the investigation that was the subject of the OTR was still pending, and Ackerman testified "No." App'x at 983. Second, Ackerman testified that, during his OTR, he asked the FINRA investigators whether there was anything improper with the bond trade in February 2014 that formed the basis of his retaliation claim:

> Bret Ackerman: I had brought it up with their investigators asking them about it. As they were asking about other trades from late 2011[,] 2012 and they told me – I asked them is there anything improper with this and they said, "There's nothing improper with it[."]
>
> [Arbitrator]: Just to be clear, FINRA took no action?
>
> Bret Ackerman: Correct.

App'x at 983.

The arbitration panel rejected the bulk of Ackerman's claims. It found in Ackerman's favor only on his claim for unpaid wages, awarding him $1,102,193.00 of the roughly $5 million he originally sought, and ordered that negative information be expunged from his U-5 form. In addition, the arbitration

7

award provided that "[a]ttorneys' fees are awarded pursuant to New York Labor Law" in the amount of $247,532, with an additional award of costs of $21,349.25. App'x at 47.

Odeon filed a petition to vacate the arbitration award in New York State court in December 2015, which Ackerman thereafter removed to the U.S. District Court for the Southern District of New York. Ackerman then filed a cross-motion to confirm the award. While the petition to vacate was pending, Ackerman had received a letter from FINRA requesting a second OTR regarding his 2011 trades to be held at its offices in Maryland. The FINRA letter came roughly one month after the arbitration ended. By then, Ackerman no longer worked as a trader and had moved to California. Ackerman declined to travel to Maryland for a second OTR, and instead accepted a ban from working as a securities trader. To that end, he entered into a letter of acceptance, waiver, and consent ("AWC") with FINRA.

Odeon learned of the AWC in March 2016, and sought to amend its petition to vacate to add fraud as an additional ground for vacatur. Odeon argued that the second request for an OTR established that Ackerman committed perjury during the arbitration. Specifically, Odeon argued that Ackerman

8

"misled the arbitration panel concerning the status and outcome of a FINRA regulatory investigation into his trading activity" by falsely testifying that "(i) FINRA affirmatively told him that there was 'nothing improper' about his trading activity, and (ii) the FINRA investigation into his activities was closed." App'x at 1552. Ackerman opposed the motion, arguing his testimony before the arbitration panel was truthful.

The district court denied Odeon's motion to amend its petition, denied the motion to vacate, and granted the cross-motion to confirm. *Odeon Capital Grp., LLC v. Ackerman*, 182 F. Supp. 3d 119, 128 (S.D.N.Y. 2016). The district court also denied Ackerman's motion for attorneys' fees. *Id*.

Despite challenging the arbitration award on multiple grounds before the district court, Odeon appeals only the district court's denial of its motion to amend to add fraud as an additional ground for vacatur. Ackerman cross-appeals from the district court's denial of his motion for attorneys' fees.

**DISCUSSION**

I.    **Materiality as a ground for vacatur**

"We review a district court's denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, such as

9

futility, in which case we review the legal conclusion *de novo*." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). "It goes without saying that there should be great hesitation in upsetting an arbitration award." *Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 34 (2d Cir. 1951). However, the Federal Arbitration Act ("FAA") permits a court to vacate an arbitration award "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1).

A petitioner seeking to vacate an award on the ground of fraud must adequately plead that (1) respondent engaged in fraudulent activity; (2) even with the exercise of due diligence, petitioner could not have discovered the fraud prior to the award issuing; and (3) the fraud materially related to an issue in the arbitration. *See Karppinen*, 187 F.2d at 34-35. The district court here did not address the first two factors, basing its denial on Odeon's failure to demonstrate that the fraud at issue—Ackerman's alleged perjury—was material to the arbitration award. *Odeon Capital Grp.*, 182 F. Supp. 3d at 128. As we did in *Karppinen*, "[w]e will assume . . . that an arbitration award may be set aside in a case of material perjured evidence furnished [to] the arbitrators by a prevailing party." 187 F.2d at 34.

Our review, then, necessarily focuses on the appropriate standard for evaluating whether the alleged fraud was material to the arbitration. For fraud to be material within the meaning of Section 10(a)(1) of the FAA, petitioner must demonstrate a nexus between the alleged fraud and the decision made by the arbitrators, although petitioner need not demonstrate that the arbitrators would have reached a different result. *See, e.g., Karaha Bodas Co., v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004) (holding that the alleged fraud must be "materially related to" the basis for the panel's decision); *Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 (6th Cir. 2003) (same); *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (9th Cir. 1990) (holding that to vacate for fraud, there must be "a nexus between the alleged fraud and the basis for the panel's decision"); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988) (holding that the alleged fraud must be "materially related to" the basis for the arbital award); *see also Hakala v. Deutsche Bank AG*, No. 01 Civ. 3366, 2004 WL 1057788, at *3 (S.D.N.Y. May 11, 2004) (noting that party seeking vacatur must "show that the fraud was material to an issue in dispute during the arbitration").

This standard is consistent with the guidance provided by *Karppinen*. There, the parties arbitrated the issue of whether two buyers could rescind the purchase of an industrial canning machine that allegedly did not work properly. *Karppinen*, 187 F.2d at 33. Before the arbitrators, the sellers argued that the buyers wanted to rescind, not because something was wrong with the canning machine, but "because they wished to buy a cheaper machine of a lower productive capacity." *Id.* The buyers refuted that theory through testimony averring that the buyers had already purchased another canning machine with greater capacity at a higher price, and submitted a purchase order for the new machine to the arbitrators. *Id.* The arbitrators granted the buyers' request to rescind. *Id.* The sellers then sought to vacate the award based on alleged perjury. Specifically, the sellers argued the testimony regarding the purchase of the alternate canning machine was untrue and the purchase order false. *Id.* at 34.

The panel in *Karppinen* upheld the district court's decision to confirm the arbitration award, explaining that:

> the bearing of the price of the [replacement canning] machine on the issues before the arbitrators is extremely remote. . . . The price paid by the purchasers for some other machine had no bearing on the real issues before the arbitrators and cannot reasonably be thought to have affected their decision in determining any relevant

12

questions before them. At most it could only bear on a possible impeachment of [the affiant] as to collateral matters, and he was subjected at the hearing below to an elaborate and inconclusive examination by appellant regarding the price of the [replacement canning] machine.

*Id.* at 35. *Karppinen* thus anticipates that a showing of materiality requires some nexus between the alleged perjury and the arbitration award.

Applying that standard here, we agree with the district court that Odeon cannot demonstrate Ackerman's alleged perjury was material to the arbitration award. While Ackerman brought a variety of claims against Odeon, the arbitrators granted him relief only on his claim for unpaid wages. That claim alleged that Odeon failed to pay him wages that were due and owing under the terms of Ackerman's employment agreement. Neither party asked for a reasoned decision from the arbitration panel. Accordingly, the award does not provide any sort of rationale or explanation for how the panel arrived at its damages award of $1,102,193.00. There is simply no basis in the record to find that Ackerman's testimony regarding the FINRA investigation played any role in the arbitrators' award on his unpaid wages claim.

Nor are we persuaded by Odeon's argument that because Ackerman was the primary witness on the wage claim, any perjury he committed during his

13

testimony taints the entirety of his testimony and undermines his credibility. A holding that any untruth could serve as a basis for vacating the award regardless of its materiality is wholly inconsistent with the language of the FAA, which allows vacatur only where the award was "*procured by* . . . fraud." 9 U.S.C. § 10(a)(1) (emphasis added). If the alleged fraud went only to a collateral issue, or to an issue that did not influence the arbitrators' findings, then that fraud cannot serve as a basis for vacating the award because the award was not "procured by" fraud.

Odeon relies on *Bonar v. Dean Witter Reynolds, Inc.*, arguing that it stands for the proposition that perjury can so injury a witness's credibility as to taint the entire proceedings and require the resulting arbitration award be vacated. *See* 835 F.2d at 1383. *Bonar* is distinguishable. There, the Eleventh Circuit vacated an award based on fraud after determining that plaintiff's expert witness lied about his credentials, faking multiple degrees and employment positions. *Id.* at 1384. In finding the perjury material, the Eleventh Circuit explained that the only issue before the arbitrators was whether to award damages, as defendant had conceded liability. *Id.* at 1384. The only evidence before the panel on the issue of punitive damages was the testimony offered by the expert witness. *Id.* at 1384-85.

14

The Eleventh Circuit concluded that if the expert "had not committed perjury by falsifying his credentials, it is extremely doubtful that he would have been permitted to testify as an expert, and the arbitrators would have heard none of the . . . testimony" regarding punitive damages. *Id*. at 1385. Without the expert's testimony, then, there would have been no evidence in the record to support any award of punitive damages. "Thus, by establishing the foundation that allowed the panel to hear influential expert testimony on the central issue of negligent supervision, the fraud materially related to an issue in the arbitration." *Id*. The Eleventh Circuit found that the expert's lies regarding his background established his bona fides as an expert witness, and absent those credentials, he would not have been able to testify as to punitive damages. Here, in contrast, the record does not suggest Ackerman's alleged perjury was so significant that it would have caused the arbitrators to disregard his testimony in its entirety.

Equally unavailing is Odeon's reliance on *MidAmerican Energy Company v. International Brotherhood of Electrical Workers Local 499*, 345 F.3d 616 (8th Cir. 2003). There, an employee charged with maintaining the security of a natural gas storage facility was fired after he abandoned his post. *Id*. at 618. He challenged his firing in an arbitration. During the arbitration, the employee testified that he

15

left his post after his wife called and told him his son was missing. *Id.* The arbitrator ordered the employee be rehired, based in part on the arbitrator's assessment that the employee took full responsibility for his actions, cooperated with management's investigations, and "has consistently owned up to what he did, indicating that he knew it to be wrong." *Id*. at 623. After the arbitration award issued, the employer allegedly learned that the employee had actually left that night to cheat on his wife. *Id.* at 619. The Eighth Circuit found that if the employee did commit perjury, it was material to the arbitration because the arbitrator's award stressed the employee's honesty and truthfulness. *Id*. at 623. Here, however, nothing in the award indicates that the arbitrators relied heavily on Ackerman's truthfulness in making its award. Indeed, given that Ackerman sought damages in excess of five million dollars and received roughly one-fifth of that amount, and that Ackerman prevailed on just one of his eleven claims, it appears the arbitrators took most of what Ackerman said with a grain of salt. Accordingly, we affirm the district court's finding that the alleged perjury was immaterial to the arbitration award.

## II. Attorneys' fees

We review the district court's denial of a request for attorneys' fees for abuse of discretion. *Scarangella v. Grp. Health Inc.*, 731 F.3d 146, 151 (2d Cir. 2013). "A court necessarily abuses its discretion when it applies an incorrect legal standard." *Id.*

"Under the prevailing American rule, in a federal action, attorneys' fees cannot be recovered by the successful party in the absence of statutory authority for the award." *International Chemical Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). But, we noted, "[p]ursuant to its inherent equitable powers . . . a court may award attorneys' fees when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (internal quotation marks omitted). The *International Chemical* court denied fees because the statute at issue in the arbitration—the Labor Management Relations Act—did not provide for a fees award to a prevailing party in an action to vacate or confirm an arbitration award. The district court relied on *International Chemical* for the proposition that "[a]s applied to suits for the confirmation and enforcement of arbitration awards, the guiding principle has been stated as follows: when a challenger refuses to abide by an arbitrator's

decision without justification, attorneys' fees and costs may properly be awarded." (internal quotation marks omitted).

The district court misapprehended the basis for Ackerman's request. Ackerman sought fees pursuant to the district court's statutory powers under New York Labor Law, not its equitable powers. New York Labor Law § 198(1-a) provides in relevant part that "[i]n any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover . . . all reasonable attorneys' fees." The arbitrators specified Ackerman's award was for "compensatory damages based on unpaid wages" and attorneys' fees "pursuant to New York Labor Law." App'x at 46-47.

Odeon argues that because Section 198(1-a) does not specifically state that that fees are due in an action to confirm or enforce an arbitration award, it does not mandate fees here. We disagree. New York's Civil Practice Law and Rules define "action" to include a "special proceeding," N.Y.C.P.L.R. § 105(b). Applications to confirm, vacate, or modify arbitration awards are made through special proceedings. *Id.* §§ 7502(a), 7510, (confirmation), 7511 (vacating or modifying). It necessarily follows that the term "action" as used in Section 198(1-

18

a) includes special proceedings to confirm or enforce an arbitration award. This is consistent with the purposes underlying Section 198(1-a), which explicitly serves as a fee-shifting statute to provide "one more safeguard to assure employees of proper payment of wages under the law and [to act as] a deterrent against abuse and violations." *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 464 (1993) (emphasis omitted).

It is also consistent with how the courts have read similar language where a statute provides for fee shifting. For example, the Employment Retirement Security Act of 1974 ("ERISA") provides that the prevailing party in an action to recover unpaid contributions to a benefit fund is entitled to an award of reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D). The district court in *Supreme Oil Co. v. Abondolo* relied on that provision to award attorneys' fees in an action to confirm an arbitration award. 568 F. Supp. 2d 401, 409 (S.D.N.Y. 2008). The court noted that "[a]n action to confirm an arbitrator's award of such payments [under ERISA] is considered to be an action to recover unpaid contributions," allowing for an award of attorneys' fees pursuant to Section 1132(g)(2)(D). *Id.* (collecting cases).

Similarly, here an action to confirm an arbitrator's award for unpaid wages is an action to recover unpaid wages. We therefore vacate the district court's denial of attorneys' fees, and remand for the district court to calculate the proper fees award. To the extent Ackerman seeks fees for defending this appeal, he must first direct his request to the district court. While appellate courts may determine appellate fees, district courts are generally best suited to undertake such tasks in the first instance. *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 144 (2d Cir. 2007) (citing *Dague v. City of Burlington*, 976 F.2d 801, 804–05 (2d Cir. 1992)).

## CONCLUSION

For the reasons set forth above, the district court's denial of Odeon's motion to amend its petition to vacate is affirmed. The district court's denial of Ackerman's motion for attorneys' fees is vacated, and we remand for further proceedings consistent with this opinion.