| |
|---|
| **Shell NA LNG LLC v Venture Global Calcasieu Pass, LLC** |
| 2026 NY Slip Op 30753(U) |
| March 2, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 659637/2025 |
| Judge: Joel M. Cohen |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 03M

-----------------------------------------------------------------------------X

SHELL NA LNG LLC

                                    Petitioner,

                    - v -

VENTURE GLOBAL CALCASIEU PASS, LLC

                                    Respondent.

-----------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 659637/2025 |
| MOTION DATE | 11/10/2025, 11/14/2025, 12/09/2025 |
| MOTION SEQ. NO. | 001 003 007 |

**DECISION + ORDER ON MOTION**

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 92, 99, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 232, 233, 245, 246

were read on this motion to     VACATE ARBITRATION AWARD                               .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 82, 83, 84, 85, 90, 91, 100, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 234, 235, 247, 248

were read on this motion for     LEAVE TO CONDUCT DISCOVERY                          .

The following e-filed documents, listed by NYSCEF document number (Motion 007) 236, 237, 238, 239, 249, 250

were read on this motion for     PROTECTIVE ORDER                                          .

This is a special proceeding challenging an arbitration award. Pursuant to Section 10 of

the Federal Arbitration Act ("FAA") and CPLR 7511, Petitioner Shell NA LNG LLC ("Shell")

seeks to vacate the final award rendered in *Shell NA LNG LLC (U.S.A.) v Venture Global*

*Calcasieu Pass, LLC (U.S.A.)*, Case No. 27797/PDP, by a three-member tribunal of the ICC

International Court of Arbitration (the "Tribunal") on August 7, 2025 (the "Award").

659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC        Page 1 of 18
Motion No.  001 003 007

1 of 18

Shell seeks to vacate the Award principally on the contention that Respondent Venture Global Calcasieu Pass, LLC ("VGCP") "misleadingly with[held] critical evidence" (NYSCEF 1 ¶2) during pre-hearing discovery and that VGCP's counsel misled the Tribunal during the hearing as to the existence of such purportedly withheld evidence. Shell also moves, pursuant to CPLR 408, for leave to conduct targeted discovery in aid of its petition, principally to determine whether the purportedly withheld evidence actually exists. VGCP opposes Shell's petition and the motion and separately moves, pursuant to CPLR 3103, for a protective order striking Shell's First Set of Requests to Admit.

For the reasons set forth more fully below, Shell's petition to vacate the Award and its motion for leave to conduct discovery are both denied and VGCP's motion for a protective order is granted. Pursuant to CPLR 7511(e) ("upon the denial of a motion to vacate or modify, [the court] shall confirm the award"), the Award is confirmed.

In a nutshell, after a lengthy discovery process followed by a two-week evidentiary hearing, the Tribunal issued a comprehensive 50-page decision in VGCP's favor based on an extensive record. The Tribunal also specifically considered (and rejected) Shell's in-hearing complaints about VGCP's purportedly incomplete document production that mirror Shell's present petition and request for CPLR 408 discovery. Notably, the petition—including its central claim that the Tribunal was misled about the potential existence of withheld documents—is premised entirely on the evidentiary record that was squarely in front of the Tribunal for consideration. Based on that same record, the Tribunal determined that no additional discovery was warranted. Given the substantial deference this Court must give to arbitral decisions, including decisions as to the scope of discovery during the arbitration, the relief Shell seeks cannot be granted. Therefore, the Award is confirmed.

659637/2025  SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC
Motion No.  001 003 007

Page 2 of 18

2 of 18

[* 2]

## FACTUAL AND PROCEDURAL BACKGROUND

Shell and VGCP entered into the Amended and Restated LNG Sales and Purchase Agreement on April 4, 2018 (*see* NYSCEF 40 [the "SPA"]). Pursuant to its terms, VGCP agreed to make available, and Shell agreed to purchase, an annual quantity of liquefied natural gas ("LNG") from VGCP's Calcasieu Pass Facility (the "Facility"), which was in the process of being constructed at the time (Award ¶ 36).

The SPA specified in detail when the parties' respective obligations would commence (*id*. ¶ 41). Although Shell proposed a date certain during negotiations, VGCP resisted, and the parties instead agreed to a complex timing mechanism that relied on a negotiated definition of "commercial operations" and three overlapping commencement date selection windows (the "Commercial Operation Date" or "COD") (*id*. ¶¶ 41-42).

While the definition of COD encompasses multiple elements, it does bear emphasis that the SPA anticipated—indeed required—that the Facility would start producing LNG before the occurrence of COD and that VGCP could sell such LNG to other purchasers prior to making it available to Shell under the agreement (*id*. ¶ 79). Only once the Facility achieved certain performance milestones, among other conditions, would COD occur and trigger Shell's rights to LNG under the SPA (*id*. ¶ 73).[1]

---

[1] The definition of COD is set out in Section 4.4(a) of the SPA, which provides *inter alia* that "the Commercial Operation Date shall not occur, and the Calcasieu Pass Facility shall not be considered "commercially operable", unless and until (i) all of the facilities comprising the Calcasieu Pass Facility have been completed and commission (including any ramp up period), (ii) the Calcasieu Pass Facility is capable of delivering LNG in quantities sufficient and quality necessary to permit Seller to perform all of the obligations hereunder and (iii) Seller shall have notified Buyer pursuant to Section 4.3."

**659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC**   Page 3 of 18
**Motion No.  001 003 007**

3 of 18

On May 11, 2023, Shell commenced arbitration against VGCP alleging that VGCP breached the SPA by failing or refusing to declare COD as of October 24, 2022, and to thereafter commence sales to Shell under the SPA's terms (*id*. ¶¶ 9, 92). Notably, Russia's invasion of Ukraine in March 2022 and the concomitant impact on the LNG market had allowed VGCP to sell the Facility's pre-COD production at a significantly higher price than that at which it was obligated to sell to Shell once COD had been achieved (*id*. ¶ 78), thus making the timing of COD an economically meaningful matter for both parties. Ultimately, VGCP announced that the Facility achieved COD on April 15, 2025 (*id*. ¶ 90).

The arbitration lasted more than two years and was overseen by three commercial arbitrators selected by Shell and VGCP. The proceeding involved extensive pre-hearing document production totaling many thousands of pages, an interim measures application, two rounds of merits briefing, a two-week evidentiary hearing featuring 26 witnesses (15 presented by Shell), two rounds of post-hearing briefing, and closing arguments (*id*. ¶¶ 16-29), all undertaken at considerable expense to the parties.

Among the many witnesses called during the evidentiary hearing was an independent engineer retained by VGCP to provide monthly reports on the Facility's progress (the "Independent Engineer"). The Independent Engineer, whom the Tribunal found to be "honest and credible," testified (consistent with VGCP's position) that declaring COD in October 2022, as Shell urged, would have been premature (*id*. ¶¶ 160-161). This testimony aligned with the reports produced by the Independent Engineer in and around that period (*id*. ¶ 160).

Shell's counsel questioned the Independent Engineer about the preparation of those reports and, in particular, the involvement, if any, of VGCP. The Independent Engineer responded, in relevant part, as follows:

**659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC**               **Page 4 of 18**
**Motion No.  001 003 007**

4 of 18

Q. … Did you have communications with Venture Global about the commercial operation date?

A. I don't remember.

(NYSCEF 71 ["Volume VII"] at 2448:10-13)

. . .

Q. … [D]id you have communications with Venture Global reflecting when or whether the commercial operation date would occur? Yes or no.

A. I had discussions with Venture Global at various times, not so much in the summer of 2022, but in the fall of 2022 when issues were manifesting over when – yes, when commercial operation might be viable.

Q. And who did you have those communications with.

A. So now you're asking me specifically. And that's definitely something I don't recall.

(*id*. at 2456:6-20)

. . .

Q. … And were some of those communications in writing? You said you exchanged drafts, sent emails.

A. So the writing aspect would have been primarily the draft report and the commentary, or the observations that would come back. Emails possibly.

Q. Okay. Do you remember the details?

A. No.

Q. The substance of those?

A. No.

Q. You have no memory?

A. No.

**659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC**
**Motion No.  001 003 007**                                                         **Page 5 of 18**

5 of 18

[* 5]

(*id*. at 2457:11-23)

. . .

Q. I'm not reproaching you. But I assume [the conclusion on COD was] also the message Venture Global was sharing with you, because that was how you were evaluating whether they were being reasonable and prudent. Right?

A. I think it was the message I was sharing with Venture Global […] from a lender's perspective.

Q. Was it the message that Venture Global was sharing with you, in those executive management reports, emails, phone calls, video conferences?

A. I'm not sure in all honesty. I'm just not sure.

(*id*. at 2467:17-2468:7)

. . .

Q. … [S]o this is your own legal assessment of the meaning of the contracts, forgive me?

A. This is the assessment that [a colleague] and I made when we were preparing the recommendation for date certain extension to the lenders.

Q. Okay. Now, well, you may not fully remember right now, is it possible that this is also something that Venture Global communicated to you, this perspective?

A. I don't believe so.

Q. Okay. But that would be in whatever those written communications were that you had with Venture Global at the time. Right? If it was there it would be in those written communications?

A. Not necessarily.

Q. It could be oral?

A. It could have been oral.

(*id*. at 2472:13-2473:10)

Relying on this testimony as purported evidence of "written communications […] reflecting VGCP's considerations about whether or when to declare COD," Shell made a mid-hearing discovery application seeking allegedly undisclosed communications between VGCP and the Independent Engineer during the period from January 1, 2022, to September 1, 2022 (*see* NYSCEF 73).

After receiving written submissions, the Tribunal afforded the parties an opportunity to address the application in person (*see* NYSCEF 76 ["Volume X"] at 3583:2-7). In opposition, VGCP's counsel stated, in relevant part:

> The premise of the application was having walked into this hearing with the documentary record and process having been behind us, Shell is trying to say that [the Independent Engineer's] testimony somehow creates a change in circumstance. And we submit that the clear testimony that he provided, notwithstanding the repeated efforts to try to get him to say something else, the clear testimony of [the Independent Engineer] was that there were no documents, written communications that would reflect consideration by Venture Global of whether and when to declare COD.
>
> And so there is no basis to reopen any of this and to make accusations of a failure to produce, or this or that. [The Independent Engineer's] testimony does not change the situation at all. And again, we invite the Tribunal to study that transcript carefully, and on that basis deny the application.

(*id*. at 3589:6-3590:5)

Upon further questioning by the Tribunal concerning documents that might be in VGCP's possession, VGCP's counsel further stated:

> Again, I'm a little reluctant to make definitive representations about a document production process that happened many months ago and that candidly, in the middle of the hearing I didn't have

time to go back and look at every search and every document. But yes, we have informed Shell and this Tribunal that internal documents were identified and they were privileged. And we therefore did not produce them.

We explained generally the context within which this occurred. We explained it again in our letter, that this was all premature because there was no, you know, imminent or reasonable declaration or consideration of COD, given the problems at the facility. But there were some documents that we withheld as privileged, yes.

And we were clear that there were no documents that were identified that we withheld as privileged of any communications with [the Independent Engineer] …

(*id*. at 3591:2-3592:4)

Following a short recess, the Tribunal rejected the application (*id*. at 3674:11-18).

Unsatisfied with that ruling, Shell then made a further request for the same communications but for an extended period through September 30, 2022 (*see id*. at 3674:21-3683:18).

In response, VGCP's counsel stated:

I don't know if I'm being invited to yet another new request from the Claimant. I made the representations that I made, we made the representations that we made after conducting the search that we agreed to, that was, again, not expanded by the Tribunal pursuant to the request.

As I said, with respect, we've been in a hearing since this application was filed 10:30 two nights ago. I don't know about documents internal to Venture Global or any correspondence, I'm not aware of anything that would fall outside of the representations that I made previously to the Tribunal. I'm not in a position to say I've gone back and looked at documents in September of 2022.

[Shell's counsel] and his client have had the [Independent Engineer's] report for that period for many, many months. Again, this is -- he's now continuing to move the goalpost.

[* 8]

The Tribunal has made a ruling. I've made the representations that
I have. I'm not aware of any responsive documents in that period.

(*id*. at 3677:18-3678:20)

. . .

That's what I can confidently and consistent with my obligations
as an officer of the court, as it were, say to this Tribunal right now.

(*id*. at 3679:21-24)

Despite Shell's counsel's observation that "the representations [VGCP's counsel] just made were very careful" (*id*. at 3681:4-5), the Tribunal rejected the application a second time (*id*. at 3743:4-9).

In the end, the Tribunal unanimously concluded, based on the extensive record presented, that VGCP had not breached the SPA by failing or refusing to declare COD on October 24, 2022 (*e.g.*, Award ¶ 237). Following approval by the ICC International Court of Arbitration on July 31, 2025, the Award was rendered on August 7, 2025.

Shell now seeks to vacate the Award on the ground that VGCP procured it through fraud or misconduct. Specifically, Shell alleges that VGCP's counsel deliberately misled the Tribunal regarding the existence of communications that were the subject of Shell's discovery applications. Shell also seeks leave to conduct discovery to identify any communications between VGCP and the Independent Engineer from January 1, 2022, to September 1, 2022, relating to the status of the Facility and COD—in other words, essentially the same discovery requested during the evidentiary hearing, which the Tribunal denied.

659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC
Page 9 of 18
Motion No.  001 003 007

[* 9]

9 of 18

## DISCUSSION

### I.   Shell's motion for leave to conduct discovery

Unlike in a plenary action, where discovery is available as of right, CPLR 408 provides that in a special proceeding such as this one "[l]eave of court shall be required for disclosure except for a notice [to admit]."

Although VGCP suggests that discovery generally should not be permitted in special proceedings concerning arbitral awards, CPLR 408 does not distinguish among the various types of special proceedings when it comes to the availability of discovery. That said, context matters. While some courts have exercised discretion to permit discovery in post-arbitration proceedings (*see e.g., TCR Sports Broadcasting Holding, LLP v WN Partner, LLC*, 2015 WL 6746689, at 4 [Sup Ct, NY County 2015] [trial court noted that it had permitted limited discovery into alleged arbitrator partiality], aff'd on other grounds, 153 AD3d 140 [1st Dept 2017]); *Frere v Orthofix, Inc.*, 2000 WL 1789641, at 4 [SDNY 2000] [noting that "discovery in a post-arbitration judicial proceeding [is available in] limited circumstances, where relevant and necessary to the determination of an issue raised by such an application"]), it does appear (from the paucity of authority cited by the parties) that doing so is relatively rare, perhaps due in part to the courts' generally deferential role in reviewing arbitral awards.  In any event, requests for leave to take discovery in a special proceeding must be decided based on the particular facts and circumstances.

Here, Shell's request for CPLR 408 discovery suffers from the additional complication that it seeks essentially the same supplemental discovery it repeatedly but unsuccessfully sought from the Tribunal during the evidentiary hearing. Thus, its request essentially requires the Court to second-guess the arbitrators' determinations with respect to the scope of discovery, something

659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC
Motion No.  001 003 007

Page 10 of 18

courts are understandably reluctant to do (*see Matter of Merrill Lynch, Pierce, Fenner & Smith*, 198 AD2d 181, 181 [1st Dept 1993] [declining to reconsider arbitrators' denial of a document request]; *Doscher v Sea Port Grp. Sec., LLC*, 2017 WL 6061653, at 5 n4 [SDNY 2017] [denying discovery in a vacatur proceeding because the respondent "was given the opportunity to obtain [most, if not all, of the discovery it now seeks] during the arbitration proceedings"]; *TCR Sports Broadcasting Holding, LLP v WN Partner, LLC*, 67 Misc 3d 1242(A), at 29-32 [Sup Ct, NY County 2019] [noting that "arbitrators have substantial discretion in regulating the scope of discovery" and declining to second-guess that judgment], aff'd, 187 AD3d 623 [1st Dept 2020], aff'd in part and modified in part on unrelated grounds, 40 NY3d 71 [2023]; *Kellner v Amazon*, 2023 WL 2230288, at 4 [2d Cir 2023] ["arbitrator's decision to exercise [their] authority [to compel discovery] in a manner different than requested by [the petitioner] is not grounds for vacatur"]).

Deference to the Tribunal's discovery rulings is particularly appropriate in this case given the circumstances in which the issue was presented. The arbitrators themselves witnessed the direct and cross-examination of the Independent Engineer, as well as the "careful" statements of VGCP's counsel on which Shell now focuses much attention. Thus the arbitrators were in a far better position than this Court to assess whether, in light of the extensive discovery process they themselves oversaw, on balance there was a need for additional discovery in the midst of the evidentiary hearing or any concerns about the credibility of VGCP's reputable counsel.[2]

---

[2] The other authorities cited by Shell—*e.g.*, *Matter of Georgetown Unsold Shares, LLC v Ledet*, 130 AD3d 99, 107 [2d Dept 2015]; *Matter of Cuzson Assoc v Village of Spring Val*, 221 AD3d 896, 897 [2d Dept 2023]; *Matter of Town of Pleasant Val. v New York State Bd. of Real Prop. Servs*, 253 AD2d 8, 15-17 [2d Dept 1999]; and *Matter of Wendy's Rests., LLC v Assessor, Town of Henrietta*, 74 AD 3d 1916, 1917 [4th Dept 2010]—none of which involved review of an

659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC                    Page 11 of 18
Motion No.  001 003 007

11 of 18

Shell's reliance on *Eletson Holdings, Inc v Levona Holdings Ltd* (2024 WL 4100555 [SDNY 2024]) is misplaced. In that case, the court permitted post-arbitration discovery only after subsequent bankruptcy proceedings revealed the existence of previously undisclosed materials, notwithstanding that an application seeking the same materials had been rejected during the arbitration (*id*. at 22). Indeed, the court had initially refused to permit any further discovery, holding that the respondent had already been afforded a full opportunity to present its case and was not entitled to "a second bite at the apple" (*see Eletson Holdings, Inc. v Levona Holdings Ltd.*, 2024 WL 246367, at 2 [SDNY 2024]). Here, Shell's sole support for its motion consists of the hearing transcript itself, amplified by conclusory and speculative accusations of misrepresentation by VGCP's counsel. To the extent Shell sought to test opposing counsel's representations, it was afforded ample opportunity by the Tribunal to do so (*see* Volume X at 3674:21-3677:16, 3680:11-3681:12), but the Tribunal was not persuaded.

Ultimately, Shell now seeks a *third* bite at the apple—making an essentially identical application to this Court in the hope of obtaining a different outcome and using it to relitigate the arbitration. That is not a persuasive basis for seeking post-arbitration discovery (*see Sorrentino v Weinman*, 50 AD3d 305, 305 [1st Dept 2008] ["petitioner raised the arguments that respondents […] failed to produce material information, which the arbitration panel rejected, and there exists no basis to disturb the panel's determination"]; *TCR Sports Broadcasting*, 67 Misc 3d 1242(A), at 31 ["[t]he record shows that the [arbitrators] considered the [applicants'] various discovery requests and rejected them in a formal, reasoned order"]; *Panzer v Epstein*, 2023 WL 4149526,

---

arbitration award under CPLR 7511—are of limited relevance other than to illustrate that courts may adopt a more permissive approach to discovery when there is no arbitration tribunal to defer to, let alone when the tribunal has already considered the discovery sought.

659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC
Motion No.  001 003 007

Page 12 of 18

12 of 18

at 2 [Sup Ct, NY County 2023] [refusing to preempt arbitrators' rejection of adjournment request to digest disclosure; "[a]rbitrators are properly given broad discretion with respect to procedural matters such as the scope of discovery"]; *Kellner*, 2023 WL 2230288, at 5 [denying motion to vacate discovery ruling because "[t]he arbitrator held a hearing in which both parties presented their arguments regarding [the petitioner's] remaining three discovery requests, and she ultimately sustained [the respondent's] objections, providing a reasoned basis for that decision"]).

To be sure, there is some tension between respecting the Tribunal's discovery decisions and the otherwise reasonable instinct to give a petitioner latitude to develop the evidentiary basis of its contentions. But that tension is of Shell's own creation. To grant Shell's discovery request would be to permit the very discovery rejected by the Tribunal on the speculative basis that perhaps the Tribunal did not accurately assess the risk that relevant documents were being withheld. As described in greater detail below, that is exactly the type of judicial second-guessing that is not permitted in a proceeding under CPLR 7511. By contrast, the few cases that have permitted discovery in aid of a petition to vacate an arbitration award have focused on allowing the petitioner to develop challenges based on facts external to the panel's decision on the merits (*see e.g., TCR Sports Broadcasting*, 2015 WL 6746689, at 4 [noting that the court allowed limited discovery into the arbitrators' alleged partiality and conflicts of interest]).

For the foregoing reasons, Shell's motion for leave to conduct discovery is denied.

## II.     VGCP's motion for a protective order

CPLR 408 permits parties to a special proceeding to serve a "notice under [CPLR] 3123 […] at any time not later than three days before the petition is noticed to be heard […]." CPLR 3123, in turn, provides that "a party may serve upon any other party a written request for

659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC          Page 13 of 18
Motion No.  001 003 007

13 of 18

admission by the latter of the genuineness of any papers or documents, or the correctness or fairness of representation of any photographs, described in and served with the request, or of the truth of any matters of fact set forth in the request, as to which the party requesting the admission reasonably believes there can be no substantial dispute at the trial and which are within the knowledge of such other party or can be ascertained by him upon reasonable inquiry."

Here, Shell does not seek to use CPLR 3123 to confirm the authenticity of documents or to seek admission of facts "as to which [Shell] reasonably believes there can be no substantial dispute." Instead, its requests to admit are a thinly veiled effort to obtain the same information sought in its requests for discretionary document discovery under CPLR 408, which have been denied for the reasons described above.

In those circumstances, VGCP's motion for a protective order striking Shell's First Set of Requests to Admit is granted.

### III.    Shell's petition to vacate

"An arbitration award must be upheld when the arbitrator offer[s] even a barely colorable justification for the outcome reached[;] an arbitrator's award should not be vacated for errors of law and fact committed by the arbitrator and the courts should not assume the role of overseers to mold the award to conform to their sense of justice" (*Wien & Malkin LLP v Helmsley-Spear, Inc.*, 6 NY3d 471, 479-80 [2006]). Accordingly, "a court may vacate an arbitration award only if it violates a strong public policy, is irrational, or clearly exceeds a specifically enumerated limitation on the arbitrator's power" (*In re Falzone (New York Cent. Mut. Fire Ins. Co.)*, 15 NY3d 530, 534 [2010]). "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high" (*U.S. Elecs., Inc v Sirius Satellite Radio, Inc.*, 17 NY3d 912, 915 [2011] [*citation omitted*]; *see similarly D.H. Blair & Co. v*

659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC
Motion No.  001 003 007

Page 14 of 18

14 of 18

*Gottdiener*, 462 F3d 95, 110 [2d Cir 2006]). Simply put, "an arbitrator's rulings, unlike a trial court's, are largely unreviewable" (*Falzone*, 15 NY3d, at 534).

The limited grounds for vacating an arbitration award are set forth in the FAA (9 USC 10) and in CPLR 7511. Relevant here is CPLR 7511(b)(1)(i), which permits a court to vacate an award upon a finding that it was procured by "corruption, fraud or misconduct" (*see similarly* 9 USC 10[a][1] ["corruption, fraud, or undue means"]).

A party claiming fraudulent procurement of an arbitration award must establish: first, that fraud occurred in the arbitration, which must be proven by clear and convincing evidence; second, that the fraud could not have been discovered through the exercise of due diligence before or during the arbitration; and third, that the fraud materially related to an issue in arbitration (*Imgest Finance Establishment v Shearson Lehman Hutton, Inc.*, 172 AD2d 291, 291 [1st Dept 1991]; *Odeon Capital Group LLC v Ackerman*, 864 F3d 191, 194 [2d Cir 2017]).

While the discovery of new evidence is not generally grounds for vacatur (*see Matter of Central Gen. Hosp. v Hanover Ins. Co.*, 49 NY2d 950, 951 [1980] [affirming arbitration award despite subsequent emergence of new evidence even though the evidence may have resulted in a different outcome]), purposeful concealment or lack of candor "does constitute the type of misconduct that [may warrant] further proceedings before the arbitrator" (*see Matter of Science Dev. Corp. (Schonberger)*, 156 AD2d 253, 254 [1st Dept 1989] [affirming vacatur where respondent concealed important evidence]).

Shell moves to vacate on the ground that VGCP's counsel procured the Award by concealing evidence from the Tribunal. Specifically, Shell contends that VGCP's counsel misled the Tribunal about the existence of purported written communications that may have occurred between VGCP and the Independent Engineer. Based on the record presented in this proceeding,

**659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC**
**Motion No.  001 003 007**

**Page 15 of 18**

15 of 18

however, the Court concludes that Shell has not met its burden to establish grounds for vacating the Award.

Shell's claim of fraud or misconduct rests on the assertions that (a) the Independent Engineer purportedly confirmed the existence of written communications between VGCP and the Independent Engineer, in or around fall 2022, reflecting consideration by VGCP about whether and when to declare the occurrence of the Terminal's Commercial Operation Date, following which (b) VGCP's counsel misrepresented that no such written communications existed. However, the record simply does not support those contentions. While the Independent Engineer's testimony suggests that VGCP may have offered commentary or made observations about the Independent Engineer's monthly reports, it did not establish—let alone by clear and convincing evidence—that there were unproduced written communications reflecting VGCP's consideration about whether and when to declare COD. Based on the testimony, which is equivocal at best, any suggestion to the contrary is conjecture.

In a similar vein, the representations of VGCP's counsel do not establish by clear and convincing evidence that VGCP's counsel knowingly made misrepresentations to the Tribunal as to whether responsive documents had been withheld from production. VGCP's counsel forthrightly explained that he had not conducted a new document review during the arbitration hearing in response to Shell's demands, but that he was unaware of any responsive and unprivileged documents that were withheld from production. As noted above, the Tribunal (which observed the testimony of the witness as well as the representations of counsel) vetted this issue during the hearing and concluded that there were no grounds to require additional discovery proceedings. In sum, Shell's suggestion that VGCP's counsel made misrepresentations

659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC
Motion No.  001 003 007

Page 16 of 18

16 of 18

to the Tribunal is pure speculation. Absent clear and convincing evidence of fraud or misconduct, and none has been presented, Shell's motion falls at the first hurdle.

Nor has Shell established that the speculated written communications between the Independent Engineer and VGCP would have been material to any issue in the arbitration. The Independent Engineer's testimony constituted only one of several independent bases supporting the Tribunal's conclusions as to the central question of whether the Facility achieved COD as of October 2022 (*see* Award at ¶¶ 140-200). Thus it is far from clear—and indeed a stretch—that disclosure of any particular correspondence between the Independent Engineer and VGCP, added to the extensive record that already existed, would have altered the record in any meaningful way (*cf. France*, 43 F4th, at 382 [concluding that "the arbitrator's fact-finding task would have looked much different" had the concealed documents been disclosed]). The Tribunal was keenly aware of how the Independent Engineer's testimony fit into the larger factual context and made the decision that no further discovery was warranted.[3]

---

[3] Moreover, under Shell's vacatur rationale, the purported "fraud" was perpetrated *against* the Tribunal. As the record reflects, the Tribunal was in position to discover any such fraud through the exercise of due diligence, thus undermining another prong of the claim of fraudulent procurement of the arbitral award. If the Tribunal deemed it necessary to determine whether the purportedly withheld communications existed, it had the authority to halt the hearing mid-stream and compel VGCP to conduct a search of its files and supplement its production—precisely the same inquiry Shell now asks this Court to undertake on an essentially identical record (*see Sorrentino*, 50 AD3d, at 305 [affirming denial of petition to vacate on the basis that the "[p]etitioner failed to demonstrate fraud on the respondents' part, much less any that was not discoverable upon the exercise of due diligence prior to or during the hearing"]; *Walzer v Muriel Siebert & Co.*, 31 Misc 3d 1240(A), at 5-6 [Sup Ct, NY County 2011] [denying petition to vacate arguing that counsel "perpetuated a fraud upon the arbitration panel" by making misstatements about certain court decisions because the arbitrators "had the opportunity to exercise due diligence during the arbitration to read the court decisions for themselves"]). The Tribunal, the purportedly defrauded party, chose not to do so.

659637/2025   SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC
Motion No.  001 003 007

Page 17 of 18

[* 17]

In sum, Shell has failed to establish grounds to vacate the Award and thus its petition is denied. In those circumstances, CPLR 7511(e) provides that "upon the denial of a motion to vacate or modify [an arbitration award], [the court] shall confirm the award."

\* \* \*

Accordingly, it is

**ORDERED** that the motion of Shell NA LNG LLC for an order granting it leave to conduct discovery is **DENIED**; it is further

**ORDERED** that the motion of Venture Global Calcasieu Pass, LLC for a protective order striking Petitioner's First Set of Requests to Admit is **GRANTED**; it is further

**ORDERED** that the petition of Shell NA LNG LLC for an order vacating the final award on liability rendered in *Shell NA LNG LLC (U.S.A.) v Venture Global Calcasieu Pass, LLC (U.S.A.)*, Case No. 27797/PDP, is **DENIED**; it is further

**ORDERED** that the final award on liability rendered in Venture Global Calcasieu Pass, LLC's favor in *Shell NA LNG LLC (U.S.A.) v Venture Global Calcasieu Pass, LLC (U.S.A.)*, Case No. 27797/PDP, is confirmed; and it is further

**ORDERED** that the parties settle a final judgment pursuant to 22 NYCRR 202.48, returnable to the Court on Monday, March 16, 2026.

This constitutes the Decision and Order of the Court.

20260302173944JMCOHEN98BADCFF32934CA9BC8961B053E74CAF

**3/2/2026**
**DATE**

**JOEL M. COHEN, J.S.C.**

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**659637/2025  SHELL NA LNG LLC vs. VENTURE GLOBAL CALCASIEU PASS, LLC**
**Motion No.  001 003 007**

Page 18 of 18

18 of 18